The **CHASE MANHATTAN BANK, N.A.,
CREDIT SERVICES DIVISION,**
Plaintiff,

v.

**Frank UNGARTEN and Christine
Ungarten, Defendants.**

**No. 82 Civ. 6669(MEL).**

United States District Court,
S.D. New York.

Aug. 20, 1990.

Hahn & Hessen, New York City (David I. Blejwas, Jeffrey S. Stein, of counsel), for plaintiff.

Frank Ungarten, Middletown, N.J., pro se.

LASKER, District Judge.

The Chase Manhattan Bank, N.A., Credit Services Division ("Chase") brought this action to enforce a personal guaranty ("the Guaranty") executed by defendants Frank and Christine Ungarten in favor of Chase on all obligations of Doreen Fashions, Inc.

("Doreen") to Chase.[1] A bench trial was held and this opinion constitutes the findings of fact and conclusions of law required by Fed.R.Civ.P. 52.

## I.

On March 21, 1977 Chase entered into a factoring agreement with Doreen ("the Agreement"), which was signed by Frank and Christine Ungarten.[2]

Paragraph 5 of the Agreement states: You [Chase] will send us [Doreen] a monthly account current as of the end of each month. Unless you receive our written objection to any account current rendered by you within thirty (30) days after the mailing of such account current, it shall be deemed accepted by us and shall become conclusive and binding upon us.

Finally, Paragraph 15 of the Agreement states:

This agreement may only be modified in writing and no waiver by you will be effective unless in writing and then only to the extent specifically stated.

Chase factored Doreen pursuant to the Agreement until Doreen terminated its business in the spring of 1982. At that time Doreen owed Chase $744,706.72, as reflected in the monthly statement prepared by Chase dated May 31, 1982.[3] Chase asserts that it received no objection from Doreen to this statement. Accordingly, Chase brought this suit in October 1982.

In November 1986 Chase moved for partial summary judgment on the first through fourth claims of the complaint, which set forth the allegations upon which the Ungartens' liability under the Guaranty and Chase's claim for attorney's fees are based. In opposition to the motion, Frank Ungarten stated in an affidavit that he orally advised Chase of objections to the monthly statements and that Chase did not promptly collect from customers of Doreen that subsequently went out of business.

The Ungartens also moved for summary judgment. On October 14, 1987 Chase's motion was granted with a more detailed memorandum to follow. However, upon reconsideration, the motions were denied in a brief memorandum dated January 29, 1988. That opinion stated:

The Ungartens admit that they did not object in writing to Chase's statements. Frank Ungarten, however, states in his affidavit that he corrected such discrepancies by calling John Benson, Vice-president of Chase who was in charge of collections. Although Ungarten's statement is not specific to the May 31, 1982 statement, it raises a question whether this informal policy was so well-developed during the course of the five year relationship and Chase sufficiently responsive to an oral rather than written correction of the account that it would be improper to hold the Ungartens liable for failure to conform to the written policy.

The opinion also concluded that another triable issue of fact remained: whether Chase improperly "charged back" to Doreen certain accounts solely because it had failed to attempt collection promptly from third party debtors which were unable to pay by the time Chase sought to collect. Paragraph 3 of the Agreement states: "You [Chase] shall not, however, have the right to chargeback to us any Receivable approved by you which is unpaid solely because of such customer's financial inability to pay."

■ Prior to trial, Chase asserted that under recent New York case law, it was entitled to summary judgment based on: 1) Ungarten's concession that he failed to object to the account current statements in writing and, 2) the contractual language of the Agreement, which requires that all objections to statements of charges be made in writing. In *I. Appell Corp. v. Crocker Commercial Services, Inc.*, 146 A.D.2d 472, 536 N.Y.S.2d 440, *vacated on other grounds*, 155 A.D.2d 331, 547 N.Y.S.2d 594

---

1. Chase's Notice of Motion for Partial Summary Judgment (November 5, 1986), Exhibit D, Guaranty, dated March 21, 1977.

2. Plaintiff's Exhibit 1.

3. Chase's Notice of Motion for Partial Summary Judgment (November 5, 1986), Exhibit E, Account Current As Of 5/31/82.

(1989), the parties had entered into a factoring agreement which "provided that any claim of mistake be made within thirty days of the monthly accounting and that any waiver of the time period be in writing." 536 N.Y.S.2d at 441. Plaintiff asserted that it made oral objections to the monthly accounting statements. The court granted summary judgment to the defendant, on the ground that:

> [S]pecific written objections to the claims made in this lawsuit are lacking and no written waivers by the defendant have been produced.

*I. Appell* clearly precludes the defense raised by Ungarten that he made oral objections to the monthly account current statements.

However, on the first day of trial Ungarten asserted, apparently for the first time, that he had in fact made written objections to the account current statements in 1981 but that Chase or the FBI had possession of such documents. The proceedings were adjourned and Ungarten was instructed to submit a letter explaining "what he believes the 1981 documents would prove that would establish or tend to establish that Doreen had objected *in writing* to any account current." [4]

Ungarten responded with a memorandum asserting that after receiving the monthly account current statement he often called George Kachejian, a Chase employee whose telephone number is printed at the bottom of the statement, and objected to one or more items. According to Ungarten, he then followed up these conversations by submitting his objections in writing. Although both Chase and the court assisted Ungarten in his attempt to locate these written objections, they have not been produced.

## II.

◼ At trial, Frank Ungarten testified that he objected in writing to various account current statements which he received

between January 1981 and February 1982.[5] He testified, however, that he could not specify which statements he objected to without seeing the actual records, which he did not have. T. 10–11. Ungarten's testimony that he objected in writing to the account current statements is inconsistent with his deposition testimony, in which he was asked the following questions and gave the following answers:

Q: Mr. Ungarten, did Doreen Fashions, Inc. receive monthly statements of account from Chase Manhattan Bank?

A: Yes, we did.

Q: Did you review those statements of account?

A: Numerous accounts, and I called the account executive, yes.

Q: Did you ever send written objection to any of those statements of account?

A: Not written. Phone calls.

Q: Is there a reason why you did not send a written objection?

A: I didn't think it was necessary.

Q: You didn't think it was necessary?

A: Yes.[6]

In addition to himself, Ungarten called two witnesses: John Benson and George Kachejian. Benson worked as a credit analyst for Chase in 1980 and 1981. He testified about the procedures by which a factoring client of Chase, such as Doreen, would contest or object to disputed charges on their account before such charges were printed on the monthly account current statement. Benson's testimony was not relevant to the simple question to be determined at trial: whether Ungarten objected in writing to the account current statements that were sent by Chase to Doreen.

Ungarten's other witness, Kachejian, was employed by Chase's Factoring Division between 1980 and 1982 and handled the Doreen account. He testified that the account current is a statement of the client's activity for a one month period, including "sales that have been assigned by the client to the factor [Chase], advances

---

**4.** Letter from the court to Frank I. Ungarten, dated February 14, 1989.

**5.** Trial Transcript ("T.") 6–7, 10.

**6.** Plaintiff's Exhibit 34, Deposition Testimony of Frank J. Ungarten, July 11, 1983.

that the client has taken from the factor and various other charges of either commission, interest and/or chargebacks of receivables." T. 34. The account current statement is similar to a monthly checking account statement, according to Kachejian. T. 58. Much of Kachejian's testimony related to procedures for disputing chargebacks to a client's account; however, disputed items such as chargebacks never appear on an account current statement, according to Kachejian. T. 57. He testified that he did not recall receiving any written objections by Ungarten or Doreen to account current statements. T. 59.

Victor Mitchell Slaiciunas, an assistant vice president and account executive with the Chase Factoring Division in 1982, testified that he reviewed the Doreen account after Chase became concerned about Doreen's operating losses and the collectability of outstanding accounts receivable. T. 72–73, 96. Slaiciunas testified that he reviewed account current statements for Doreen but did not recall ever having received or seen any written objection to any of the statements. T. 73.

The Ungartens have not provided any evidence, other than Frank Ungarten's inconsistent testimony, that they ever objected, either in writing or orally, to the May 1982 account current statement or to any earlier account current statements. It is unfortunate that the documents that the Ungartens assert would prove their contention are missing. However, in this eight year old case, the Ungartens waited until 1988 to request such documents from Chase. Chase has delivered all documents requested by Ungarten which it had in its possession. Apparently the documents Ungarten still seeks were sent by Chase to the FBI pursuant to an FBI investigation of Doreen, which was closed in 1985. Although the court assisted in the efforts to locate and retrieve these documents from the FBI, no documents were found.[7]

I find that the Ungartens have failed to prove the defense that they objected to the account current statements provided by Chase. Moreover, Frank Ungarten has failed to provide any evidence to prove that Chase improperly charged back certain accounts solely because they failed to collect promptly. Accordingly, the Ungartens are liable to Chase on the First and Third claims of the complaint.

■ The Second and Fourth claims of the Complaint state claims for reasonable attorney's fees. The Guaranty specifically provides: "[I]f any claim hereunder is referred by you to an attorney for collection, we shall pay the reasonable attorney's fees and expenses thereby incurred." The right to enforce a contract clause providing for the recovery of attorney's fees has been repeatedly upheld by New York courts. *Brenhouse v. Anthony,* 156 A.D.2d 411, 548 N.Y.S.2d 533, 535 (2d Dep't 1989); *Mohawk–Schoharie Production Credit Association v. Wilber,* 71 A.D.2d 720, 419 N.Y. S.2d 762 (3d Dept.1979), *aff'd,* 50 N.Y.2d 983, 431 N.Y.S.2d 529, 409 N.E.2d 1001 (1980). Accordingly, the Ungartens are liable for Chase's reasonable attorney's fees.

### III.

■ The Fifth Claim of the Complaint asserts that Ungarten defrauded Chase by submitting, for advance payment, fictitious accounts receivable totalling $423,000. Paragraph 3 of the Agreement, Plaintiff's Exhibit 1, states in relevant part:

We [Doreen] represent and warrant that each and every Receivable now or hereafter assigned to you will cover a bona fide sale and delivery of merchandise usually dealt in by us or the rendition by us of services to customers in the ordinary course of our business; cover merchandise or services which have been received and accepted by our customers without dispute or claim of any kind or nature.... In the event of our breach

---

7. The court, by letter dated March 16, 1989, instructed Chase to contact William B. Pollard, Deputy Chief of the Criminal Division in the United States Attorney's Office to specify the documents sought. However, Pollard reported that, after searching the relevant files, no documents were found. *See* letter of Jeffrey S. Stein to William Pollard, dated August 29, 1989 (confirming telephone conversation of August 17, 1989).

of any of the foregoing representations or warranties, you shall have, in addition to all your other rights under this Agreement, the right to chargeback to us immediately the full amount of the Receivables affected thereby together with interest.

Chase contends that Ungarten breached this provision of the Agreement by knowingly and fraudulently submitting accounts receivable for fictitious orders or for orders from customers which Doreen never delivered. Chase also seeks punitive damages of $400,000, asserting that Ungarten committed this fraud with "malice aforethought and wanton dishonesty."[8]

With respect to this claim Chase called three witnesses. Ungarten testified that he prepared transfer lists which contained a list of invoices for goods that were supposed to have been shipped by Doreen to its customers, which Chase would then purchase from Doreen. The transfer lists, Plaintiff's Exhibits 5A through I, bear Ungarten's signature and he testified that he generally reviewed these lists before they were sent to Chase.

William Slattery was an accounts payable supervisor during 1981 and 1982 at Associated Retail, one of the companies that purchased items from Doreen. Slattery testified about the procedure by which goods sent from sellers were received by Associated Retail. Specifically, Slattery testified that Associated Retail did not pay three invoices from Kris's Closet (a subsidiary of Doreen), Plaintiff's Exhibits 7, 8 and 9,[9] because proof of delivery was requested but never received or verified. T. 122–26.

Rose Postrion, a former clerk in the accounts payable department of the Lady Rose division of a company called Masters, which did business with Doreen and Kris's Closet, testified in detail about the invoice/payment process at her company during the relevant period. Postrion testified that eight invoices from Doreen and Kris's Closet for goods purportedly purchased by the Lady Rose division of Masters were never received and consequently never paid. T. 137–42.

Although the credible and direct testimony of Postrion and Slattery raise serious questions about whether Frank Ungarten violated Paragraph 3 of the Agreement, Chase has failed to provide sufficient evidence that Frank Ungarten knowingly or fraudulently submitted accounts receivable for fictitious orders or for orders which Doreen never delivered to its customers. The evidence presented by Chase is insufficient to establish "malice aforethought or wanton dishonesty." Accordingly, Ungarten is not liable on the Fifth Claim of the complaint, and Chase is not entitled to punitive damages.

In sum, the Ungartens are liable to Chase on the First through Fourth claims of the Complaint. The remaining claims are dismissed.

Submit judgment on notice.

---

**8.** Complaint, dated Oct. 7, 1982, Sixth Claim for Relief, at ¶ 25.

**9.** *See* Plaintiff's Exhibit 7, Invoice # 002947, dated March 8, 1982, in the amount of $7,344; Plaintiff's Exhibit 8, Invoice # 002927, dated December 14, 1981, in the amount of $2,160; Plaintiff's Exhibit 9, Invoice # 002926, dated December 14, 1981, in the amount of $2,160.